UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| DANNY A. TEMPLETON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:19-CV-71-REW |
| | ) | |
| v. | ) | |
| | ) | OPINION & ORDER |
| APPOLO FUELS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

## INTRODUCTION

Plaintiff Danny Templeton worked as a miner for Debra Lynn Coals, Inc. (DLC) from March 1978 through November 1978 and then from July 1980 until February 14, 1996. DE 70-3. In September of 2010, citing shortness of breath and inability to walk more than a short distance, Templeton filed for benefits under the Black Lung Benefits Act (BLBA). DE 70-11. Seven years and many convolutions later, a Department of Labor Administrative Law Judge approved the claim, finding Templeton eligible for benefits going back to February of 2011. DE 70-1. Under the BLBA, the primary responsibility for payment of claims falls on mine operators and their insurers—in this case, per the DOL, DLC and Appolo Fuels Inc. (AFI), respectively (although the nature of AFI's insurance contract with DLC is disputed). After Templeton's claim was approved and served, the DOL notified AFI that DLC was obligated to "pay monthly benefits to claimant beginning January 2018 at the rate of $660.10 [and] pay [Templeton] $50,277.80" for past benefits

1

owed. DE 70-2.[1] The DOL also granted Templeton's request for $18,076.98 (cumulatively) in attorney fees. DE 70-20.

Neither DLC nor AFI has made any of the required payments. Templeton now moves for summary judgment to enjoin DLC, and its officers Thomas K. Evans and Debra Anderson, and AFI, and its president and secretary, Gary Asher, (collectively, Defendants), to pay: (1) his benefits as awarded by the ALJ on September 25, 2017 and as calculated per DE 70-2; (2) interest on the unpaid benefits; (3) 20% additional compensation, a statutory non-payment penalty; and (4) interest on the 20% additional compensation. DE 70 at 1, 29. Templeton also seeks the awarded unpaid attorney fees plus interest. DE 70 at 19. Defendants oppose the motion. DE 77 (AFI and Asher Response in Opposition); DE 78 (DLC, Evans, and Anderson Response in Opposition). Templeton has replied to those responses. DE 79. The matter, now fully briefed, is ripe for review.

Templeton, with an award in hand, is entitled to payment. Defendants invite a game of musical chairs where each posits a theory to shirk liability, effectively hollowing Templeton's victory and leaving him standing alone, with no real remedy. That is not what Congress intended; the Act and record will not countenance such a result here. The Court **GRANTS** in part and **DENIES** in part Templeton's motion for summary judgment. Defendants DLC, Thomas Evans, Debra Anderson, and AFI are together jointly and severally liable for benefits and penalties owed, interest on those benefits and penalties, and Plaintiff's attorney fees. For the reasons discussed below, Defendant DLC is liable as the responsible operator, Evans and Anderson are liable as the officers of the responsible operator, and AFI is liable as the insurer. However, Defendant Gary

---

[1] The letter also calculated amounts owed to the Department of Labor, outside the scope of this dispute. DE 70-2; *see also* DE 43 (Order dismissing DOL from this dispute).

Asher is not personally liable.  The Court enjoins those liable to comply with the applicable orders and pay what they owe.[2]

### JURISDICTION & STANDARD OF REVIEW

The Longshore Harbor Workers' Compensation Act (LHWCA) gives federal district courts jurisdiction to enforce properly made and served final orders awarding benefits under the act. 33 U.S.C. § 921(d) ("If the court determines that the order was made and served in accordance with law, and that such employer or his officers or agents have failed to comply therewith, the court shall enforce obedience to the order[.]"). The LHWCA's procedures are incorporated into the Black Lung Benefits Act via 30 U.S.C. § 932(a). *Thacker on behalf of Estate of Clevenger v. Old Republic Ins. Co.*, 416 F. Supp. 3d 651, 660 (E.D. Ky. 2019) ("33 U.S.C. § 921(d) is incorporated by reference into the BLBA.").[3]

A court may grant a motion for summary judgment only if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party." *Combs v. Meijer, Inc.*, No. 5:12-CV-209-KSF, 2012 WL 3962383, at *2 (E.D. Ky. Sept. 10, 2012) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed.2d 538 (1986))."  To defeat a motion for summary judgment, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Accordingly, the Court now proceeds to a "threshold inquiry of determining

---

[2] This Order does not address the DE 50 crossclaim. Nor does this Order affect any claims the Department of Labor may have against Defendants.

[3] 33 U.S.C. § 921 is hereafter, § 921. All subsequent references to §§ 718.1-727.320 are from 20 C.F.R §§ 718-727 and all § 933 references are to 30 U.S.C. § 933.

whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.*

Notably, the Court has a cabined role under § 921(d), that of enforcement.  The statute directs scrutiny of whether the compensation order "was made and served in accordance with law." If so, and if the employer and its agents have not complied, enforcement is a mandate.  Thus,

> It is clear from the statutory scheme that our enforcement powers under s 921(d) . . . are not of substantive dimension. That is to say s 921(d) reposes in this court the responsibility of screening compensation orders for procedural defects and thus affording responsible employers a measure of procedural due process before enforcement can be effected.

*Marshall v. Barnes & Tucker Co.*, 432 F. Supp. 935, 939 (W.D. Pa. 1977); *see also Grimm v. Vortex Marine Constr.*, 921 F.3d 845, 847 (9th Cir. 2019) (noting that the statute gives district courts no jurisdiction "over the merits of the litigation," that a district court "cannot affirm, modify, suspend, or set aside the order" but that "jurisdiction extends only to the enforcement of compensation orders") (quoting *Thompson v. Potashnick Const. Co.*, 812 F.2d 574, 576 (1987)). Defendants here do not attack the procedural formulation or foundation of the compensation order, and they do not claim to have complied with its directions.

## THE BLACK LUNG BENEFITS ACT (BLBA)

Congress passed the Black Lung Benefits Act (BLBA) to ensure financial support to former coal miners (and their heirs) rendered totally disabled by pneumoconiosis contracted from working in a mine. *Appleton & Ratliff Coal Corp. v. Ratliff*, 664 F. App'x 470, 471 (6th Cir. 2016).[4] Disabled former miners bring claims for benefits under the BLBA to the Department of Labor. The DOL then determines whether the miner is eligible and, if so, what party is responsible for paying those

---

[4] Pneumoconiosis is also known as black lung disease.

benefits. *Id.* at 471-72; *Thacker*, 416 F. Supp. at 656. Congress intended for the BLBA to shift risk and liability for benefits onto the mining industry. *Arkansas Coals, Inc. v. Lawson*, 739 F.3d 309, 313 (6th Cir. 2014) (citing *Director, OWCP v. Oglebay Norton Co.,* 877 F.2d 1300, 1304 (6th Cir.1989)). Accordingly, coal mine operators have the "sole duty to provide benefits under the BLBA[.]" *Travelers Ins. Co. v. Blackstone Min. Co.*, No. 2007-CA-001610-MR, 2012 WL 2603623, at \*1 (Ky. Ct. App. July 6, 2012); *see also* §§ 933; 726.4. The guiding principle of the DOL regulations is ensuring that "coal mine operators are liable 'to the maximum extent feasible' for awarded claims." *Ark. Coals, Inc.*, 739 F.3d at 313 (citation omitted).

To establish a reliable, alternate source of revenue (in the event of operator insolvency, for example), the BLBA requires financially liable operators "to either qualify as a self-insurer or purchase insurance to cover any BLBA liability." *Karst Robbins Coal Co. v. Dir., Office of Workers' Comp. Programs*, 969 F.3d 316, 320 (6th Cir. 2020) (citing § 933(a); § 725.494(e)).[5] Commercially purchased insurance policies must guarantee "'the payment of benefits as required' under the BLBA." *Travelers Ins. Co.*, 2012 WL 2603623, at \*1 (citing §§ 726.201–726.202).[6] As a result, all BLBA insurance contracts obligate the carrier to "'cover fully all of the coal operator's liabilities under the BLBA,' and . . . pay benefits equal to those provided under the BLBA." *Id.*

---

[5] To qualify as a self-insurer, operators must "obtain Departmental approval and meet the Department's requirements—including posting a surety bond or other security—to guarantee that the mine operator can pay future liability." *Arch Coal, Inc. v. Hugler*, 242 F. Supp. 3d 13, 16 (D.D.C. 2017), *aff'd sub nom. Arch Coal, Inc. v. Acosta*, 888 F.3d 493 (D.C. Cir. 2018).

[6] The Secretary of Labor regulates the contents of all BLBA insurance policies to ensure they meet the BLBA's requirements. *Karst*, 969 F.3d at 326 (citing § 933(b)(3)). Existing mandatory provisions include: required elements for carrier eligibility, § 725.101(a)(18); mandatory reporting requirements pursuant to § 726.208; and acceptance of liability pursuant to § 726.208. BLBA insurance contracts are also required to include an endorsement assigning liability to the carrier whose coverage was in effect "the last day of the last exposure [to coal dust], in the employment of the insured[.]" § 726.203(a); *Westmoreland Coal Co. v. Dir., Office of Workers' Comp. Programs, United States Dep't of Labor*, 696 F. App'x 604, 608 (4th Cir. 2017).

(quoting *Lovilia Coal Co. v. Williams,* 143 F.3d 317, 322 (7th Cir.1998)); §§ 726.204–726.207.

BLBA insurance carriers therefore "step[] into the shoes" of the operator so that, from a claimant's

or the government's perspective, there is no disruption in the event of an operator's inability or

refusal to pay. *Tazco, Inc. v. Dir., Office of Workers Comp. Program, U.S. Dep't of Labor*, 895

F.2d 949, 951 (4th Cir. 1990). If there is no responsible operator or insurer able to pay benefits,

the Black Lung Disability Trust Fund exists as a final fail-safe to provide benefits to eligible

claimants. *Karst*, 969 F.3d at 320; *see also* 26 U.S.C. § 9501(d)(1).[7]

### THE CLAIMS PROCESS

After a miner files a claim with "the applicable district director for the Office of Workers'

Compensation Programs[,]" the district director "investigates the claim and makes a preliminary

determination of the miner's eligibility and" which operator (*i.e.*, former employer) is responsible

for paying benefits. *Arch Coal, Inc.*, 242 F. Supp. 3d at 16 (citing 33 U.S.C. § 919; § 725.401-23).[8]

The district director then provides the claimant and the potentially responsible operator with notice

---

[7] The Trust Fund is administered by the Department and financed by an excise tax on coal. *Arch Coal, Inc.*, 242 F. Supp. 3d at 15.

[8] An operator will only be designated as responsible if "(i) the miner's disability or death arose out of employment with the operator; (ii) the entity was an operator after June 30, 1973; (iii) the miner worked for the operator for at least one year; (iv) the miner's employment with the operator included at least one working day after December 31, 1969; and (v) the operator is financially capable of assuming liability for the claim." *Rockwood Cas. Ins. Co. v. Dir., Office of Workers' Comp. Programs, United States Dep't of Labor*, 917 F.3d 1198, 1201–02 (10th Cir.), *cert. denied sub nom. Rockwood Cas. Ins. Co. v. Dir., Office of Workers' Comp. Programs, Dep't of Labor*, 140 S. Ct. 502, 205 L. Ed. 2d 317 (2019) (citing § 725.494(a)-(e)). When there are multiple qualifying operators, "the responsible operator is the last coal mine operator to have employed the claimant as a 'miner' for more than one year." *Id.* (citing §§ 725.494(c) - 495(a)(1)). "An operator is capable of assuming liability if it satisfies one of the following three conditions: '(1) the operator obtained a policy or contract of insurance . . . ; (2) [t]he operator qualified as a self-insurer . . . during the period in which the miner was last employed by the operator . . . ; or (3) [t]he operator possesses sufficient assets to secure the payment of benefits in the event the claim is awarded in accordance with § 725.606.'" *Ark. Coals, Inc.*, 739 F.3d at 313 (quoting § 725.494(e)(1)-(3)); *see also Karst*, 969 F.3d at 320 (discussing the Department of Labor's BLBA operator liability determination process).

and an explanation for its "proposed decision and order." *Id.* (citing § 725.418).[9]  If neither party responds to the proposed order within thirty days of its issuance, the proposed decision and order becomes final. § 725.419(d) ("Once a proposed decision and order or revised proposed decision and order becomes final and effective, all rights to further proceedings with respect to the claim shall be considered waived, except as provided in § 725.310.").[10]

A responsible operator's payment is then due within thirty days of (1) the issuance of an effective compensation order and (2) the issuance to the parties of the district director's computation of benefits.[11] §725.502; *Thacker*, 416 F. Supp. 3d at 657-58. An ALJ decision and order qualifies as a "compensation order." *Thacker,* 416 F. Supp. 3d at 659 (compiling cases).[12] That order becomes effective once filed with the district director. §§ 921(a); 725.479(a); *see also Nowlin v. E. Associated Coal Corp.*, 266 F. Supp. 2d 502, 504 (N.D.W. Va. 2003) (discussing

---

[9] Claimant and the potentially responsible operator may either accept the proposed decision or seek a hearing with an Administrative Law Judge, who will make a *de novo* determination. *Arch Coal, Inc.*, 242 F. Supp.3d at 21; *see also* § 725.455(a); *Pyro Mining Co. v. Slaton*, 879 F.2d 187, 190 (6th Cir. 1989). If a party is dissatisfied with that decision, it may appeal to the Benefits Review Board before the order becomes final. §§ 921(b); 725.481. Appeals of a Review Board decision go to either the board, *en banc*, or a federal court of appeals for the circuit in which the injury occurred. §§ 921(b)(5),(c); § 725.482; *see also Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 744 (6th Cir. 2019), *reh'g denied* (Sept. 24, 2019) (describing the DOL's BLBA claims review and appeals process).

[10] § 725.310 provides the process for the modification of awards and denials.

[11] §§ 725.502(a)(1-2) ("[B]enefits under the Act shall be paid when they become due. Benefits shall be considered due after the issuance of an effective order requiring the payment of benefits . . . [a]n order issued by an administrative law judge becomes effective when it is filed in the office of the district director (see § 725.479).");  (b)(2) ("Within 30 days after the issuance of an effective order requiring the payment of benefits, the district director shall compute the amount of benefits payable for periods prior to the effective date of the order, in addition to any interest payable for such periods (see § 725.608), and shall so notify the parties. Any computation made by the district director under this paragraph shall strictly observe the terms of the order. Benefits and interest payable for such periods shall be due on the thirtieth day following issuance of the district director's computation. A copy of the current table of applicable interest rates shall be attached to the computation.").

[12] A compensation order either rejects the claim or makes the award. § 919(e); *see also Thacker*, 416 F. Supp. 3d at 658.

when benefits become due). Provided that first condition is met, when the district director's computation of benefits issues, the thirty-day clock starts running. § 725.502(b)(2) ("Benefits and interest payable ... shall be due on the thirtieth day following issuance of the district director's computation."). *Thacker*, 416 F. Supp 3d at 657-659.

Operators that fail to pay benefits when due are subject to several penalties. First, "[i]n any case in which an operator fails to pay benefits that are due (§ 725.502), the beneficiary shall also be entitled to simple annual interest, computed from the date on which the benefits were due." § 725.608(a)(1). In the Sixth Circuit, interest starts accruing on the day of the initial determination that the claimant is eligible for benefits. *Byrge on behalf of Est. of Byrge v. Premium Coal Co. Inc.*, 301 F. Supp. 3d 785, 801-02 (E.D. Tenn. 2017) (citing *Youghiogheny & Ohio Coal Co. v. Warren*, 841 F.2d 134, 138 (6th Cir. 1987)).[13]

A failure to pay benefits within ten days of the ripe obligation automatically triggers a separate penalty surcharge equal to 20% of the underlying compensation award. 33 U.S.C. § 914(f); § 725.607.[14] If an operator is liable for the 20% penalty, "the beneficiary shall also be entitled to simple annual interest computed from the date upon which the beneficiary's right to additional compensation first arose." § 725.608(a)(3); *Thacker*, 416 F. Supp. 3d at 670 (explaining

---

[13] Claimants are however not entitled to any interest from a period in which the BLBA Trust Fund made payments. In those circumstances, the Trust Fund may have a claim against the non-paying party. § 725.608(b); *Byrge*, 301 F. Supp. 3d at 802 ("To be clear, however, the Plaintiff is not entitled to interest on any payments that the Trust Fund has paid because only the Trust Fund is entitled to such interest payments.").

[14] "The 20% penalty assessment arises automatically under [] § 914(f) when an employer is untimely in its payment of benefits awarded by an ALJ." *Thacker*, 416 F. Supp 3d at 663 (quoting *Nowlin v. E. Associated Coal Corp.*, 331 F. Supp. 2d 465, 468 (N.D.W. Va. 2004)).

that the clock starts running for interest on an unpaid penalty on same day that claimant is first entitled to the payment, *i.e.*, the eleventh day after the payment was first due).[15]

### STATEMENT OF FACTS

In September of 2010, Plaintiff Danny Templeton filed a claim for BLBA benefits.  DE 70 at 6-7; DE 70-11. Upon receiving the claim, the Department of Labor notified DLC that it had been designated as a "potentially liable operator." DE 70-12 at 1. The notice also indicated that, according to Department of Labor records, DLC was uninsured for the period of the relevant claim. *Id*. Roughly two weeks later, Denise Davidson, describing herself as "counsel of record" for DLC, responded to contest the designation.[16] DE 70-14 at 2. Davidson's response also included a handwritten note that DLC was "self-insured thru[sic] Appolo Fuels." *Id*. at 3. The same day that response went out, a claims examiner with Underwriter Safety & Claims[17] wrote to ask DOL to list AFI as DLC's insurance carrier. DE 70-13. Less than a week later, DOL sent out an amended notice of claim, still designating DLC as the potentially liable operator, but now also noting that DLC is "self-insured thru[sic] Appolo Fuels Incorporated." DE 70-15 at 1.[18]

About three months later, in early 2011, a DOL claims examiner in the Office of Workers' Compensation (OWCP) notified the parties that, based on her initial review of the evidence,

---

[15]  In *Thacker*, the "district director issued a computation of benefits payable on August 17, 2016. The benefits awarded and interest payable became due on September 16, 2016—the thirtieth day following the issuance of the district director's computation." 416 F. Supp. 3d at 663. Accordingly, the 20% penalty was triggered on September 27, 2016, "the eleventh day after the benefits awarded and interest payable became due." *Id*. at 663.

[16] Specifically, she denied all of the following: DLC was an operator for any period after June 30, 1973; DLC employed Templeton for a cumulative period of not less than one year; Templeton was exposed to coal mine dust while employed with DLC; Templeton's period of employment with DLC included at least one day after December 31, 1969, DLC or its insurer is financially capable of assuming liability for the payment of benefits. DE 70-14 at 3.

[17] AFI's third-party administrator. *See, e.g.,* DE 70-22; DE 70 at 11 ¶ 22; DE 70-21 (Sisson Deposition).

[18] Appolo Fuels Incorporated was copied on the mailing. DE 70-15at 2.

Templeton was not eligible for benefits at that time, but, if he were, DLC would be designated as the responsible operator and therefore held liable for the payment of benefits. DE 70-16 at 1.[19] The notice also listed DLC as self-insured through Appolo Fuels Incorporated. DE 70-16 at 1. Although the question of Templeton's benefits eligibility would be litigated for several more years, on November 20, 2012, Davidson, writing on behalf of DLC and AFI in a formal filing, conceded that DLC lacked a valid basis for contesting, among other issues, "whether the employer was properly designated as the responsible operator, among other issues." DE 70-17.

In September of 2017, an Administrative Law Judge issued a decision finding Templeton eligible for benefits retroactive to February of 2011. DE 70-1 at 11. A hard copy of the order was sent to the district director, and as a result it became an "effective compensation order" on October 2, 2017 (the received or filed date) pursuant to §§ 725.479 and 725.502(a)(2); *see also Thacker*, 416 F. Supp. 3d at 658. DLC was therefore obligated to begin paying Templeton's prospective monthly benefits on November 15, 2017. § 725.502; *Hudson v. Pine Ridge Coal Co.*, LLC, No. CIV.A. 2:11-00248, 2012 WL 386736, at *6 (S.D.W. Va. Feb. 6, 2012). On January 18, 2018, DOL sent AFI a computation of benefits noting that DLC was obligated to pay Templeton $50,722.80 for benefits owed from February 2011 to February of 2016 and an additional $660.10 per month beginning January of 2018. DE 70 Ex-2 at 1.[20]

---

[19] DE 70-16 at 7 (explaining why DLC was designated as the responsible operator).

[20] The notice also directed Debra Lynn Coals, Inc. to "reimburse the Black Lung Disability Trust Fund the sum of $19,757.80 for interim benefits paid to Templeton from March 2016 through December 2017" and the Department of Labor $1,413.96 for the cost of diagnostic examinations and related travel, and $1,476.22 for Templeton's treatment costs. DE 70-2 at 1. The Department of Labor is not however a party to this suit; these aspects of the order are not presently before the Court. DE 43 (Order Dismissing the DOL).

Therefore, DLC's retroactive payment of benefits and interest was due by February 17, 2018.[21] However, neither DLC nor AFI has made any payments.[22] Accordingly, Plaintiff moves this Court to enter summary judgment and enforce the award pursuant to § 921(d). Specifically, Plaintiff seeks (1) benefits as awarded by the ALJ on September 25, 2017; (2) interest on the unpaid benefits; (3) 20% additional compensation; and (4) interest on the additional compensation. DE 70 at 29. Defendants also seek unpaid attorneys' fees plus resultant interest and allege that "Defendants will be separately liable for additional attorneys' fees and expenses for this enforcement action if the Court awards them." DE 70 at 29. The Court addresses each claim in turn.

## ANALYSIS

### *Debra Lynn Coals, Inc. is Liable as the Responsible Operator*

A responsible operator is obligated to ensure and secure the payment of BLBA payments. *Travelers Ins. Co.*, 2012 WL 2603623, at *1; *see also* §§ 933; 726.4. Although DLC now seems to suggest that it is no longer capable of paying,[23] it conceded in the DOL adjudication process that it had no grounds to contest its designation as a "responsible operator." DE 70-17 at 2. "[S]tipulations and concessions bind those who make them[.]" *Consolidation Coal Co. v. Dir., OWCP* ("*Burris*"), 732 F.3d 723, 730 (7th Cir. 2013). Accordingly, the time for DLC to contest its responsible operator designation has passed. § 725.408(a)(3).[24] Because there is nothing in the

---

[21] Benefits and interest are "due on the thirtieth day following issuance of the district director's computation." § 725.502(b)(2); *Thacker*, 416 F. Supp. 3d at 658; DE 70 at 23.

[22] Instead, the Black Lung Disability Trust Fund has been paying Templeton's monthly benefits since March of 2016. DE 70-2 at 1; DE 70 at 9. The Department of Labor is not a party to this suit and therefore this Order does not affect any claim, interest, or right to a claim held by DOL. DE 43.

[23] *See, e.g.,* DE 9 at 2; DE 78 at 2.

[24] "Under the Department of Labor's regulations, no operator may submit evidence regarding the operator's capability of assuming liability for the payment of benefits unless it does so within

record to challenge DLC's designation as the responsible operator (or the DOL adjudication process), DLC is liable for payment of Templeton's benefits. DLC did not appeal the final administrative decision in this case.

Effectively conceding its designation as the responsible operator, DLC's opposition to Plaintiff's motion for summary judgment makes the following arguments to protest liability: (1) DLC fulfilled its obligation under the BLBA by purchasing insurance from AFI, and therefore AFI, not DLC, is liable to pay benefits; (2) due process precludes finding in favor of Templeton because neither DLC nor its officers had the opportunity to properly litigate their status in the DOL adjudication process; and (3) potential pending action by the Department of Labor against AFI precludes the Court's jurisdiction. DE 78 at 12-17. For the following reasons, none offers a basis to deny Plaintiff's motion.

*Purchasing Insurance Does Not Absolve an*
*Operator of Liability to Pay BLBA Claims*

DLC's central argument against Templeton's motion is that it cannot be held liable because it "fulfilled its duty to secure benefits under § 933." DE 78 at 13.[25]  This argument has no legal support. The mere purchase of insurance under the BLBA does not change the fact that coal mine operators have the "sole duty to provide benefits[.]" *Travelers Ins. Co.*, 2012 WL 2603623, at *1. DLC remains liable "to the maximum extent feasible" for Templeton's BLBA claims. *Ark. Coals, Inc.*, 739 F.3d at 313. DLC offers no authority to challenge this conclusion.

---

ninety days of receiving notice that it is a 'potentially liable operator.'" *A&R Coal Corp.*, 664 F. App'x at 475 (citing § 725.408(a)(3), (b)(1–2)).

[25] DLC argues that as a result, its obligations were "subsumed" by AFI. DE 78 at 14-15. The record is not clear as to whether DLC was self-insured or purchased insurance. The Court's judgment hinges on AFI's failure to contest its designation as the insurer during the DOL adjudication process. Thus, the self-insured versus commercial distinction is not outcome determinative. DE 80; DE 81.

Instead, its theory asks the Court to endorse a concept of liability shifting that runs counter to the BLBA's deliberate assignment of risk and accountability to operators. *See Karst*, 969 F.3d at 326 (discussing the assignment of costs and risks to operators in the BLBA); *see also A&R Coal Corp.*, 664 F. App'x at 471. If, as DLC asserts, the insurer were "solely liable for the obligations of the operator" upon the purchase of seemingly *any* insurance, (DE 78 at 14) then operators' incentive to purchase comprehensive, effective insurance would decline. Here, this dispute's presence in federal court raises questions as to the quality of product purchased by DLC. Absolving DLC of liability for the ostensible purchase of insurance (despite the material concerns about the nature and reliability of the product purchased) implicates serious policy concerns. Costly litigation exactly like the present dispute would increase. All of this could delay benefits payments to claimants and increase financial risk to the Government and the Trust Fund.

DLC misunderstands the nature of the § 933(g) insurance requirement. It is an added layer of security to ensure claims payments and limit the Government's financial risk. *Lovilia Coal Co.*, 143 F.3d at 322 ("The BLBA and its regulations require that every coal operator's contract of insurance contain provisions agreeing to cover fully *all* of the coal operator's liabilities under the BLBA."). It does not, however, allow operators to move from first liability to third (behind carriers and the government) merely by purchasing insurance. *See C & K Coal Co. v. Taylor*, 165 F.3d 254, 258–59 (3d Cir. 1999); *Oglebay Norton Co.,* 877 F.2d at 1304-5 (discussing responsible operators' place in the liability chain under the BLBA). DLC essentially seeks to flip the BLBA on its head by putting the Government and claimants first in line to financial risk, ahead of operators.  That is not the BLBA scheme.

The two cases DLC cites to support its argument (*A&R Coal Corp.*, 664 F. App'x 470 and *Brock v. Ken-Lick & Tip Top Coal, Inc.*, 912 F.2d 465 (6th Cir. 1990)) contradict its position;

*Brock* does so nearly directly. In *Brock*, OWCP ruled that the claimant miner was eligible for benefits and that his former employer, Tip Top, was the responsible operator and therefore obligated to pay. *Brock*, 912 F.2d *1. In response, Tip Top notified OWCP that the insurance carrier for the claim would be General. *Id.* at *2. General however disputed that it was liable, saying that the claimant's injuries and term of employment predated the effective period of its insurance coverage. *Id.* In the meantime, the proposed order holding Tip Top responsible went final, and OWCP directed Tip Top to "begin paying [claimant's] benefits immediately." *Id*. Rather than complying, Tip Top told OWCP "that it was seeking reimbursement from Liberty [another insurer] since General had refused coverage." *Id.*  More than five years later, "the Secretary filed a complaint [against Tip Top] for enforcement in the district court[,]" for the still-unpaid benefits. *Id.* at *3. Tip Top again tried to shift liability onto the insurers by impleading Liberty and General as third-party defendants while arguing that Liberty was actually responsible for payment of benefits. *Id*. In response, and relevant here, a magistrate judge issued a Report and Recommendation noting that "Tip Top's good faith belief that it was insured does not exempt it from liability under the Federal Mine Safety and Health Act[.]" *Id*. That recommendation was accepted without challenge. *Id*. [26]

Although the facts in *A&R Coal Corp.* do not map on as neatly, it still supports granting Plaintiff's motion for summary judgment against DLC. The "primary issue on appeal" in *A&R* was the operator's argument that the Kentucky Insurance Guaranty Association (KIGA) was not responsible for paying a claimant's benefits. 664 F. App'x at 474. Nowhere in *A&R* does the Sixth Circuit suggest that an operator's purchase of insurance exempts that operator from liability.

---

[26] The primary issue in *Brock* was not whether Tip Top was liable as the operator. It was. Instead, the main issue was a dispute between the operator and its (alleged) insurer. *Brock*, 912 F.2d at *8. The same ultimate result obtains here.

Instead, the Sixth Circuit, in finding that A&R was "precluded from contesting its liability for the payment of benefits[,]"extensively discussed operators' place at the top of the BLBA's order and priority for liability. *Id.* at 471-5.

Accordingly, DLC's argument that it satisfied its obligations under §933 and therefore is not liable here does not raise a material question of fact or law to block Plaintiff's motion for summary judgment. *See Brock*, 912 F.2d at *3. The obligation to secure insurance, here doubtfully met, would not displace DLC's liability. § 932(b) ("During any such period each such operator **shall be liable** and shall secure the payment of benefits[.]"); § 933(a) (requiring operator to "secure the payment of benefits **for which he is liable** under section 932") (emphases added). DLC has failed to comply with a compensation order properly made and served. It makes no argument contesting the process behind, regularity, or service of the order; rather DLC tries post-order arguments in avoidance. Those fail, and the Court must enforce the obligation against DLC.

*DLC Does Not Provide*
*Evidence of a Due Process Violation*

DLC also argues that "[a]ny injunction rendered against Debra Lynn Coal[sic] or its officers would constitute a denial of due process." DE 78 at 13, 16. Again, this argument raises no material questions of fact or legal reason to preclude granting Templeton's sought relief against DLC. Fed. R. Civ. P. 56(a). The crux of DLC's argument is that it "has[,] since the inception of this claim[,] been informed that Appolo Fuels would be assuming responsibility for the payment of benefits." DE 78 at 16-17. DLC suggests that, had it been aware that Appolo "had been denied approval" to sell BLBA insurance, it could have more actively participated in the claims review, which would have ensured that "the very questions as to whether it had met its obligations under § 933 could have been answered within the administrative proceedings." DE 78 at 17. DLC, a represented party throughout, cannot build a due process claim on its own strategic elections.

15

"The Due Process Clause of the Fifth Amendment applies to administrative proceedings just as it does to other instances of government action." *Karst*, 969 F.3d at 329. The central function of the clause is to ensure that any party is given "adequate notice and a fair opportunity to be heard before being deprived of its property[.]" *Id*. For a party to succeed on a due process claim challenging the result of an adjudicative process, the party must show both a procedural error and prejudice. *Id.*; *see also Peabody Coal Co. v. Holskey*, 888 F.2d 440, 443 (6th Cir. 1989). Here, DLC can show neither.

First, as discussed above, an operator does not escape liability merely by "meeting obligations under 30 U.S.C. § 933." DE 78 at 13. Therefore, the suggestion that DLC's participation could have led to a different outcome is not logically true (even without addressing whether DLC did, actually, meet its obligations). Separately, DLC's due process claim lacks merit because DLC has been aware of Templeton's claim for years; it received and responded to the early notice from the Department of Labor, was a party from beginning to end, and failed to challenge (indeed conceded) its designation as a responsible operator within the proper BLBA framework. §§725.408(a)(3), (b)(1-2).[27] The Department of Labor sent notice to DLC that it had been designated as a potentially liable operator on September 23, 2010. DE 70-12 at 1. A few weeks later, DLC, by counsel, responded. DE 70-14; *see also* DE 70-17. Thus, DLC cannot point to a procedural error. DOL properly put DLC on notice for its potential liability and gave DLC an opportunity to contest that liability. Rather than do so, DLC, through designated counsel, conceded that it lacked "any evidence to contest . . . whether the employer was properly designated as the

---

[27] An operator that fails to challenge its financial ability to pay benefits within ninety-days of "receiving notice that it is a 'potentially liable operator'" is "precluded from contesting its liability for the payment of benefits." *A&R Coal Corp.*, 664 F. App'x at 475.

responsible operator." DE 70-17 at 2. "[S]tipulations and concessions bind those who make them[.]" *Consolidation Coal Co.,* 732 F.3d at 730.

DLC's citation to *Tazco* does not support a due process argument here. *See* DE 78 at 16 (citing *Tazco, Inc.*, 895 F.2d at 949). The issue in *Tazco* was "whether a default award on a claim for black lung benefits entered by the Department of Labor against a coal mine operator may stand, **where the insurance carrier liable for the claim received no notice of the pending adjudication**." *Tazco, Inc.*, 895 F.2d at 949 (emphasis added). The Fourth Circuit rejected the Board's argument that "the Department of Labor was only required to notify the responsible operator because the operator and the carrier are one entity for the purpose of notification." *Id*. Thus, *Tazco* stands for the proposition that a carrier and operator must *each* be given notice of a pending BLBA claim. Those facts do not apply here. There is no question that the September 23, 2010 notice went to DLC. Instead, DLC's argument is premised on the idea that its own errors in confirming or policing insurance status caused it to falsely believe that it was shielded from liability to Templeton's claim. DLC's perceptions and internal processes have no bearing on the due process argument. "Under the procedural element of that clause, a party must be afforded adequate notice and a fair opportunity to be heard before being deprived of its property." *Karst*, 969 F.3d at 329. Here, DLC, a party on notice and represented throughout, got both.

*Action by the DOL Against Appolo Fuels*
*Would Not Justify Staying this Proceeding*

Finally, DLC argues that "the Court should not intervene where the Secretary agency is contemplating enforcement proceedings against Appolo Fuels." DE 78 at 15. Defendants allege that the Secretary is "apparently" contemplating an action against Appolo Fuels pursuant to § 725.609. DE 78 at 3,16. A Department of Labor action against Appolo Fuels would not and does not foreclose this Court's jurisdiction to enforce this properly adjudicated award. DLC offers no

authority to suggest an administrative action would displace Templeton's right to seek enforcement. A court does have discretionary power to stay proceedings. *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55, 57 S. Ct. 163, 166, 81 L. Ed. 153 (1936). But that power should be exercised after weighing the competing interests. *Id*. The party seeking the stay "must make out a clear case of hardship or inequity in being required to go forward[.]" *Id.*

Here, there is no basis for a stay. First, any pending Department of Labor action against Appolo Fuels would have no impact on DLC's liability. DLC's argument is again premised on the incorrect theory that DLC's liability hinges on the status of its insurance relationship with Appolo. Further, it has now been nearly eleven years since Templeton applied for benefits and more than three years since the DOL's computation of benefits. DE 70-2, 11. Granting the desired stay for the pendency of a potential and indeterminate DOL action against AFI would impose further hardship on Templeton. Any action between DOL and AFI is separate from the present dispute— as evidenced by DOL's earlier dismissal. DE 38; DE 40.[28]

Templeton meets his Rule 56 burden and is entitled to judgment as a matter of law. The BLBA makes coal mine operators financially responsible for paying benefits to their qualifying employees. *A&R Coal Corp.*, 664 Fed. App'x at 471 (citing § 932(b-c)). DLC does not raise any material fact or issue calling into question whether it is the responsible operator for Templeton's claim, an administratively adjudicated matter. Accordingly, and bearing in mind the limited scope of review under § 921(d), Templeton's motion for summary judgment against DLC is granted.

---

[28] The Department of Labor argued that it "is not a necessary party under either Federal Rule of Civil Procedure 19 or 30 U.S.C. § 923(k)." DE 38 at 1. The Court granted the request. DE 43.

<u>*Evans and Anderson are Personally Liable as Officers of the Responsible Operator*</u>

*Neither Evans nor Anderson Disputes DLC Officer Status*

As a mechanism to achieve the BLBA's policy goals and ensure compliance, § 933(d)(1) "assesses personal liability on certain corporate officials if the employer required to secure benefits fails to do so." *Donovan v. McKee*, 669 F. Supp. 138, 139 (S.D.W. Va. 1987), *aff'd*, 845 F.2d 70 (4th Cir. 1988).[29] Specifically, the president, secretary, and treasurer of any liable operator are held "severally personally liable" for benefits owed but not paid by the corporation arising under the BLBA.[30] §933(d)(1). Accordingly, Templeton now seeks to hold Thomas K. Evans and Debra L. Anderson—the president of DLC and the secretary and treasurer, respectively—personally liable. DE 70 at 1; DE 79 at 12. For the following reasons, the Court grants Plaintiff's requested relief.

Evans and Anderson raise no question as to whether the two are DLC's "most recent" officers.[31]  Instead, their argument against liability is the same due process argument addressed and rejected above. *See* DE 78 at 16 (arguing that personal liability would "constitute a denial of due process"). The argument still does not persuade. First, Defendants present no evidence to suggest *why* individual liability, a statutory fixture, here would violate due process. They do not allege an actual lack of notice. Nor could they. When the Department of Labor served Debra Lynn Coals, Inc. with the notice of claim, Debra Anderson signed for it. DE 79-1. Instead, they again

---

[29] "[A]ny benefit which may accrue under this subchapter in respect of any disability which may occur to any employee of such corporation while it shall so fail to secure the payment of benefits as required by this section." § 933(d)(1).

[30] 30 U.S.C.A. Ch. 22, Subch. IV. *See Donovan*, 669 F. Supp. at 140 (finding officers of responsible operators "personally and severally liable for the payment of black lung benefits to [the claimant].").

[31] *See* DE 50 (describing Anderson and Evans as DLC's "present officers" of DLC); DE 70-4 at 3 (referring to Evans and Anderson as DLC's "most recent officers" in the statement of undisputed facts, which Defendants did not challenge); DE 78 (conceding that both Evans and Anderson are DLC officers); DE 9, at 5 (admitting officer status during DLC's "existence" with an alleged dissolution in 2013, which was after the key uninsured period at issue here).

seek to argue that their mistaken belief that they were immune from liability led them to participate in the claims process more passively, perhaps, than they otherwise would have. DE 78 at 16-17. Ignorance of the law is again no defense here. *McGehee Family Clinic, P.A.*, 2010 WL 3583386, at *6. Thus, Evans and Anderson do not state a valid due process claim. There is no evidence of either a procedural default or prejudice. *Karst*, 969 F.3d at 329–30.

Returning then to the outcome determinative question, the Defendants have not provided any basis to challenge their status as officers of DLC. Fed. R. Civ. P. 56(a). Accordingly, they are personally liable given the established failure of AFI to qualify as approved and effective benefits security. Defendants' opposition to liability is understandable. Section 933(d)(1) places a true burden on the individual officers of coal mine operators. However, that burden was one Congress intentionally established as a mechanism to promote the BLBA's twin aims of promoting coverage and shifting risk onto operators. *Metzler v. Tackett & Manning Coal Corp.*, 958 F. Supp. 307, 311 (E.D. Ky. 1997) (finding that individual officer liability helps "ensure that the coal companies and their officers would bear the burden for black lung, and not the United States").[32] Defendants may not now escape liability because it proves to be the exact consequence that Congress intended.[33]

---

[32] *Metzler*, 958 F. Supp. at 311 ("[U]nder the regulations it is clear that Congress' intent was to ensure that the coal companies and their officers would bear the burden for black lung, and not the United States."); *see also* § 725.490(a) ("One of the major purposes of the black lung benefits amendments of 1977 was to provide a more effective means of transferring the responsibility of the payment of benefits from the Federal government to the coal industry with respect to claims filed under this part.").

[33] Defendants also argue that personal liability for Anderson would be particularly improper since she was "not an officer while Mr. Templeton was employed by [DLC]." DE 70 at 2. § 933(d)(1) does not "define when the officer must be in place for liability to attach." *Metzler*, 958 F. Supp. at 310. However, courts have already addressed this exact question and found that an officer's role post-dating the claim or term of claimant's employment is no defense to liability. *Id.* at 311; *Donovan,* 669 F. Supp. at 138 (applying § 933(d)(1) retroactively to hold officers personally and severally liable).  Assumption of officer status carries risks, like the pass through embodied in § 933.

Here, the record establishes conclusively that DLC did not effectively secure benefit payment by one of the mechanisms the BLBA sanctions.  The AFI self-insurance apparatus did not have the proper federal black lung endorsement and did not secure DOL approval.  DE 70-5 at 170 (Gaudiano Deposition) DE 70-7 (Gibson Memorandum). Thus, because the lapse happened during the liability accrual period, both DLC and its present officers bear individual responsibility, per the statute.  Plaintiff's motion for summary judgment and injunctive relief against Defendants Evans and Anderson is **GRANTED**.

*AFI is Liable as the Insurance Carrier*

*AFI's Failure to Contest Its Liability as a Carrier During the DOL Adjudication Precludes it from now Raising the Argument*

Templeton also moves for summary judgment and injunctive relief against AFI and its president, Gary Asher. He offers two distinct theories to support the claim: (1) AFI is liable as the insurance carrier and Asher as its officer and (2) AFI here was not just a carrier, but also functionally an operator—therefore it is liable as an operator and Asher as its officer. DE 70 at 16. The Court finds that AFI is jointly liable as the adjudicated carrier, but that liability does not attach to Asher as an individual. The Court rejects the second claim because this is not the proper venue to raise for the first time a novel theory of liability, which also would have due process implications for Asher personally.

A BLBA carrier "step[s] into the shoes of" and assumes full responsibility and liability for the obligations of the operator.  *Tazco, Inc.*, 895 F.2d at 951. Here, Templeton and DLC argue that AFI was DLC's BLBA carrier, and therefore AFI is fully liable for DLC's obligations arising under the act. DE 70 at 16; DE 78 at 13-15. Both Templeton and DLC point to substantial evidence

21

indicating that AFI was DLC's BLBA insurance carrier.[34] Conversely, AFI points to aspects of the record that could reasonably support the conclusion that it is not liable as DLC's insurer, that coverage was never actually in place. First, the underlying contract was never produced and appears to be lost. DE 70-8 at 16 ("[I]f there was [a contract agreement describing the terms of the insurance], it's probably in the Cumberland River somewhere"). In *Brock*, unresolved questions about an insurer's and operator's relationship were enough to defeat a motion for summary judgment. 912 F.2d at *8. Second, the Department of Labor's "Blue Card" record system reflects that DLC lacked coverage for the period covering Templeton's claim. DE 70-10. This supports AFI's defense that "the adjudicated claims fall outside of applicable dates of Appolo's insurance coverage for federal black lung disability claims and Appolo was not an authorized insurer for federal black lung benefits on the date of the claims." DE 77 at 15. All things being equal, it is true that AFI would not be liable if the claim were outside of the coverage period. *Westmoreland Coal Co.*, 696 F. App'x at 608 ("[A]n insurer is liable if coverage was in effect on 'the last day of the last exposure [to coal dust], in the employment of the insured.'") (citing § 726.203(a)). Therefore, in a dispute hinging on the exact nature of AFI and DLC's insurance contract, a motion for summary judgment might not be proper because a reasonable finder of fact would need to resolve contested matters.

---

[34] *See, e.g.,* Plaintiff's assertion that AFI "voluntarily identified itself as a party responsible for Mr. Templeton's claim and withdrew any objection to being named as responsible." DE 70 at 16; deposition testimony from AFI's secretary and treasurer acknowledging that Appolo Fuels joined with a Kentucky insurance agency to form "their own agency" and then took further steps to obtain approval for the plan, including by establishing a deposit account. DE 70-5 at 135; *see also* DE 78 at 6; the letter from US&C identifying Appolo Fuels, Inc as DLC's insurance carrier (DE 70-13); a check to Underwriters Safety & Claims from Appolo Fuels for "KY Claims Reserve" (DE 70-22); AFI spent considerable sums of money litigating Templeton's claim (DE 70-18; *see also* DE 70 at 8 ¶13); and a general lack of objection to designation as the insurance carrier once put on notice by the Department of Labor in October of 2010. DE 70-15.

But this is not a contract claim; rather it is an enforcement action brought before the Court pursuant to § 921(d). Such an action is one of limited scope. Accordingly, the question is whether there is any triable issue as part of or legal impediment to determining whether the compensation order was "made and served in accordance with law." § 921(d); *see also Byrge*, 301 F. Supp. 3d at 795. The answer to that question turns on AFI's involvement in the proceeding at the Department of Labor. Here, AFI's early notice, active participation, and failure to contest its designation as the insurer preclude it from now challenging, after the fact, its designation as the responsible carrier. *Tazco*, 895 F.2d at 950 (quoting *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865 (1950)). As a result, AFI, having inserted itself into the fray, characterized itself as the responsible insurance carrier, and prompted that designation from the administrative process, may be held liable. § 725.419(d).

On October 7, 2010, Underwriters Safety and Claims, AFI's TPA, asked DOL to list AFI as the insurance carrier for Templeton's claim. DE 70-13. Days later, DOL sent out an amended notice of claim listing AFI as the insurance carrier. DE 70-15. AFI does not argue that it lacked notice of its potential liability. Nor does it produce evidence suggesting that it actively litigated or contested its designation as the carrier (even though it appears to have spent thousands of dollars challenging the merits of Templeton's claim). DE 70-18.[35] Indeed, counsel representing both interests participated fully. *See* DE 70-17 (show cause response made for DLC "and its carrier" AFI). Accordingly, the Court finds that AFI may not challenge its designation as the carrier for

---

[35] AFI similarly does not challenge the allegations that it took steps to self-insure and "continued to collect premiums" from DLC and other contract miners. DE 70 at 5 ¶ 7. This too weighs in favor of liability. "[A]n insurer cannot continue to accept premiums on a fraudulently obtained policy in the hopes that no claim will be made, and then void that policy as soon as a claim is filed and its previous choice becomes unprofitable." *Karst*, 969 F.3d at 329; *see also* DE 70 at 18. It would be inequitable for AFI to benefit from a lack of diligence that went into its insurance operations by allowing the liability here to fall only on DLC.

the first time at the enforcement stage. Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 1814, 149 L. Ed. 2d 968 (2001) (internal quotation marks omitted).

Consistent with the BLBA's assignment of primary liability to the operator, the primary focus of a DOL BLBA claims adjudication is the operator. The carrier is something of a functional "plus-one."[36] However, both the operator "and your insurer shall be considered parties to the claim" unless dismissed.  DE 70-15 (Amended Notice of Claim). The regs and caselaw clearly place the carrier on the hook for adjudicated operator liability.  To quote from § 726.207: "Every obligation and duty in respect of payment of benefits. . . required or imposed by the Act or the regulations . . . upon an operator shall be discharged and carried out by the carrier as appropriate." The carrier is an independent party to a proceeding and, once notified of its potential designation, should participate accordingly. Section 726.207 puts carriers on notice for potential liability, and § 725.419 directs parties to participate or risk waiving claims. AFI came to the claim table at the beginning, litigated throughout as carrier (representing DLC's interests), and it is wholly appropriate to impose the resulting obligations on AFI with its nominal insured DLC.  In this context, requiring AFI to join in discharging and carrying out the adjudicated duty and obligation to Templeton is apt and proper. Again, at this enforcement stage, where AFI raises no procedural cavil as to order propriety, the Court will not let AFI's post-order wrangling deter enforcement of a valid compensation award.  AFI donned and wore the carrier shroud; it may not shrug that off now.

---

[36] *See, e.g.,* DE 70-16 at 1 ("the coal mine operator named above is the responsible operator liable for the payment of benefits"); DE 70-2 ("Debra Lynn Coals Inc shall provide monthly benefits to the claimant[.]").

In *Brock*, where outstanding questions about an insurance contract justified a denial of a grant for summary judgment, the potentially liable insurance companies had (unlike here) actively challenged their liability upon notice. 912 F.2d at *2-4. The Fourth Circuit in *Tazco* similarly supports the notion of carriers as independent participants to the proceeding, with agency and an obligation to act on defenses or risk forfeiting them. 895 F.2d at 949. The issue in *Tazco* was a due process claim raised by an insurance carrier ordered by the DOL ALJ to pay benefits on the basis of a default judgment, where notice went only to the operator. *Id.* at 950. In response to the ALJ's order, the insurer "filed a motion contesting the default award on the ground that adequate notice had not been originally provided." *Id.* The Fourth Circuit sided with the insurer and rejected the DOL's view that "the insurance carrier is not entitled to separate notice of a claim if the coal mine operator has been notified." *Id.* ("In 'any proceeding which is to be accorded finality,' due process requires that *all* interested parties receive notice 'reasonably calculated, under all the circumstances, to apprise [them] of the pendency of the action and afford them an opportunity to present their objections.'") (quoting *Mullane,* 339 U.S. at 314) (emphasis in original).

As *Tazco* and *Brock* illustrate, carriers are independent parties to the BLBA DOL adjudication process. The operator may be the central focal point of the proceeding, but an insurer, once joined, is a party and on notice of potential liability. All parties are obligated to respond with any objections to a proposed order, and an absence of responses will lead the proposed decision and order to become final, so that "all rights to further proceedings with respect to the claim shall be considered waived, except as provided in § 725.310." § 725.419(d). Here, AFI failed to assert its challenge to its designation as the carrier; indeed, it prompted the designation. The final Decision and Order on Second Remand, which made the award at issue, expressly applied to DLC as "employer" and to AFI as "carrier." AFI may not take one posture throughout the administrative

25

process[37] and then effect a heel turn when the payment obligation ultimately comes due. Accordingly, Plaintiff's motion for summary judgment against AFI as the insurance carrier bound to the obligations of the operator is **GRANTED**.

*Gary Asher is Not Personally Liable for Plaintiff's Claim*

Templeton also argues that Gary Asher may be held personally liable for the award under the ambitious theory that § 726.207's assignment to the carrier of "equivalent liabilities to the operator" also imports the individual liability provision in §933(d)(1) to the officers of that insurance carrier. DE 70 at 16; *see also* DE 79 at 18. Plaintiff does not provide authority to support this expansive interpretation. The argument lacks regulatory and statutory support. First, §726.207 assigns "[e]very obligation and duty" to "the carrier as appropriate." The word officer does not appear in that section. A court should be reluctant to pierce the corporate veil absent a clear directive. To wit, § 933(d)(1) provides clear statutory authority to hold the officers of operators personally liable. That direction is also consistent with Congressional intent. It keeps the burden where Congress wanted it (with the operators) and creates an incentive to promote compliance with the requirement to secure payment to employees (thus preventing the costs from falling to the Government or claimants). *Metzler*, 958 F. Supp. at 311. Templeton provides no evidence that Congress intended for §933(d)(1) to apply to parties other than the enumerated officers of non-paying operators. And there is ample reason why Congress might have been reluctant to do so. Attaching personal liability to insurers' officers would carry substantial implications for the entire

---

[37] Again, DE 70-17 is telling. AFI *as carrier* and DLC responded together and withdrew any contest of DLC as the responsible operator. Both were part of that filing. Thus, given § 726.207, AFI was standing with DLC in respect to the prospective potential liability—it uttered nary a word to suggest an argument about its own status. Whatever may be the ultimate result between the entities, which the Court does not address here, AFI cannot dance away from the Templeton liability, now final.

26

insurance industry—and certainly for BLBA insurance. Accordingly, the Court will not read in a theory of liability that lacks supporting authority and appears to contradict, or at least greatly expand beyond, Congressional intent as expressed through text. Therefore, Plaintiff's motion for summary judgment against Defendant Gary Asher, to impose personal liability in his individual capacity as an officer of AFI, is **DENIED**.

*Appolo Fuels is not Liable*
*as an Operator*

Templeton also argues that AFI may also be held liable as an operator since "Appolo Fuels would be named as the 'operator' if Debra Lynn Coals could not pay benefits." DE 70 at 16 (citing § 725.493(a)(1)). To support this claim, he points to the fact that "when Appolo Fuels initially identified itself as a responsible party, it wrote its name into the 'operator' box of the Notice of Claim, not the 'carrier' box." DE 70 at 17 (referencing DE 70-13). He further argues that AFI's relationship with Templeton was that of a functional operator and that, from a policy perspective, "[a] party may not 'avoid benefit payments simply by effecting convenient changes of the business form under which coal mining operators are conducted [and that] [t]here is no warrant in the statutory language . . . allowing operators to resort to [] shell game maneuvers to avoid liability[.]'" DE 70 at 17 (quoting *Donovan v. McKee*, 845 F.2d 70, 72 (4th Cir. 1988)).

This is not the proper forum to litigate whether AFI is the *de facto* operator. As Templeton correctly notes, the Court's role here is "to determine whether 'the order was made and served in accordance with law[.]'" DE 70 at 17 (quoting § 921(d)). The same principle bars the Court from now entertaining, for the first time, on a motion for summary judgment, whether AFI could be liable as an operator. A change in theory exceeds the simple enforcement mandate.  Templeton provides no evidence that this theory of liability was any part of the DOL adjudication. Therefore, it would not be appropriate to introduce, adopt, and bind a defendant to a new and impactful theory

of liability at this stage. Further, holding AFI liable as an operator could open Gary Asher up to personal liability—a liability which, based on the proceeding below, he had no reason to expect as the officer of an insurance carrier. The proper forum for this charge was with the Department of Labor. Accordingly, the Court **DENIES** Plaintiff's motion for summary judgment and injunctive relief against AFI (on this theory) and, accordingly, also its officer Gary Asher.

*Motion for Attorney Fees is Granted*

Plaintiff also asks the Court to compel Defendants to pay $18,076.98 in "unpaid attorneys' fees plus interest for the work establishing Mr. Templeton's award." DE 70 at 29.[38] Pursuant to § 725.367(a), "[a]n attorney who represents a claimant in the successful prosecution of a claim for benefits may be entitled to collect a reasonable attorney's fee from the responsible operator that is ultimately found liable for the payment of benefits[.]" An ALJ's award of attorney fees is "neither enforceable nor payable" until a final decision in the case. *See, e.g.*, DE 70-20 at 8 (citing § 725.367(a)). A decision and order becomes final thirty days after it is filed in the office of the district director. § 725.479.[39] Here, the decision and order was received by and filed with the district director on October 2, 2017. DE 70-1. Pursuant to § 725.479, it became final on November 1, 2017 (thirty days later).[40]

---

[38] Alleging "$18,076.98 in awarded [but unpaid] attorney's fees to Appalachian Citizens Law Center." DE 70 at 19; DE 70-20; *see also* DE 70 at 10 ¶ 19 (citing DE 70-20 (ALJ Awards of Attorneys Fees)). DE 70-20 includes several attorney fee awards granted by the DOL ALJ: July 29, 2016 (ordering DLC to pay ACLC $10,400.00 "in compensation for professional services . . . plus $51.98 for miscellaneous expenses incurred) (DE 70-20 at 8); January 29, 2018 (awarding $3,500.00 in attorney's fees) (DE 70-20 at 12); March 26, 2018 (awarding $4,125.00) (DE 70-20 at 16) (totaling $18,076.98). The ALJ's final order issued on October 2, 2017 did not itself award attorneys fees. DE 70-1 at 10 ("No award of attorney's fees for services provided to the Claimant is made herein because no fee application has been received.").

[39] *See* § 725.479(a). Relatedly, the operator is obligated to pay the award "in a lump sum after the award of benefits becomes final." § 725.367.

[40] Plaintiff writes that "the ALJ's award became final on October 25, 2017-thirty days" after the ALJ's September 25, 2017 Decision and Order on Second Remand. DE 70 at 21. However, the

The "attorneys' fees remain unpaid." DE 70 at 10 ¶ 21.[41] If an operator owes attorney fees, and the payment is past-due because the award of benefits has become final, "the attorney shall also be entitled to simple annual interest, computed from the date on which the attorney's fee was awarded. The interest shall be computed through the date on which the operator paid the attorney's fee." § 725.608. Here, the award was imposed against Debra Lynn Coals, Inc. DE 70-20 at 8. However, § 933(d)(1) makes qualifying officers of a liable operator "severally personally liable, jointly with such corporation, for any benefit which may accrue under this subchapter in respect to any disability which may occur to any employee of such corporation while it shall so fail to secure the payment of benefits as required by this section." The §§ 725.366-67 attorney fees provisions arise under "Subchapter IV of the Federal Coal Mine Health and Safety Act of 1969." § 725.1. Accordingly, the Court **GRANTS** the motion for enforcement of attorney fees against Defendants DLC, Thomas Evans, Debra Anderson and (again, as carrier with the imported coextensive duty and obligation) AFI.[42] Plaintiff is also entitled to interest on those fees, computed from the date on which each fee was awarded, pursuant to § 725.608.

*Plaintiff's Motion for Supplemental Authority*

Defendants DLC, Evans, and Anderson move to "exclude from consideration the supplemental authority filed by" Templeton. DE 81. Templeton offers the supplemental authority to give additional context on the Department of Labor's "self-insurance" process. DE 80. ("Comparing these requirements to Appolo Fuels's actions in this case provides further clarity that Appolo Fuels was not an approved self-insurer for federal black lung benefits.") *Id*. at 2. The cited authority has some relevance to this dispute. The Court, seeing no prejudice (because no one

---

Court, noting the operative date as the October 2 date of filing, disagrees and finds that the decision and order became final and the attorney fees came due on November 1, 2017.

[41] Defendants do not contest this. *See* DE 77, 78.

[42] AFI's liability attaches per § 726.207, discussed previously.

asserts that AFI actually did have approval and took all required steps) and in aid of a complete record, **DENIES** Defendants' DE 81 motion to exclude.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court **ORDERS**:

1) Defendants Debra Lynn Coals, Inc., Thomas Evans, Debra Anderson, and Appolo Fuels, Inc., **are together jointly and severally liable to** pay benefits to Claimant in the amounts awarded by the ALJ on September 25, 2017 and as later calculated on January 18, 2018, both prospectively and retroactively. This includes, without limitation, $50,277.80 for benefits owed between February 2011 and 2016 and a continuing prospective benefit duty;

2) Defendants Debra Lynn Coals, Inc., Thomas Evans, Debra Anderson, and Appolo Fuels, Inc., **are together jointly and severally liable to** pay all interest owed pursuant to 20 C.F.R. § 725.608 (with any proper reduction or allocation for periods covered by the DOL);

3) Defendants Debra Lynn Coals, Inc., Thomas Evans, Debra Anderson, and Appolo Fuels, Inc., **are together jointly and severally liable to** pay monthly benefits in the amount of $660.10, retroactive to January of 2018 (with any proper reduction or allocation for amounts paid by the DOL) and then prospectively;

4) Defendants Debra Lynn Coals, Inc., Thomas Evans; Debra Anderson, and Appolo Fuels, Inc., **are together jointly and severally liable to** pay $10,055.56 (20% of the underlying award) to Claimant, pursuant to 33 U.S.C. § 914(f); 20 C.F.R. § 725.607.  Further, a like additional 20 per centum award applies to each additional payment due and unpaid within the period described in §§ 914(f) and 725.607;[43]

---

[43] Defendants do not claim to have made payment, and they do not contest the application of 33 U.S.C. § 914(f).  Compensation under the award has not occurred, leading to the added "20 per centum" amount.

5) Defendants Debra Lynn Coals, Inc., Thomas Evans, Debra Anderson, and Appolo Fuels, Inc., **are together jointly and severally liable to** pay interest on that $10,055.56, computed from February 28, 2018, pursuant to 20 C.F.R. § 608(a)(3) and such other 20% payments from their applicable due dates;

6) Plaintiff's motion for summary judgment and injunctive relief against Gary Asher in his individual capacity is **DENIED**;

7) Plaintiff's motion for payment of attorney fees (and appropriate interest) as provided in DE 70-20 is **GRANTED**;

8) Defendants' DE 81 motion to exclude supplemental authority is **DENIED**;

9) The parties should confer on the final benefits calculation and interest due and may tender a joint motion or other motion further specifying or refining relief, as applicable; and

10) The Court enjoins compliance with the DOL's award of benefits and fees, and with this enforcement order, by Debra Lynn Coals (to include, for compliance purposes, Thomas K. Evans, Sr., Debra L. Anderson, and its other officers) and by Appolo Fuels, Inc. (to include, for compliance purposes, its officers).  Failure to comply may be punishable as a contempt of Court.

This the 10th day of March, 2021.

**Signed By:**

_**Robert E. Wier**_

**United States District Judge**